UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re<br>MICHAEL LEONARD BYCE and ELIZABETH LEA BYCE,<br><br>                    Debtors | Case No. 1:11-cv-00378-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| JUSTMED, INC.<br><br>                    Plaintiff,<br>         v.<br>MICHAEL LEONARD BYCE,<br><br>                    Defendant. | |

### INTRODUCTION

Before the Court is JustMed, Inc.'s motion to withdraw this adversary proceeding from the bankruptcy court. The Court has determined oral argument would not significantly assist the decisional process and will therefore consider the motion without a hearing. For the reasons expressed below, the Court will deny the motion.

### BACKGROUND

Michael and Elizabeth Byce filed a chapter 7 bankruptcy petition in September 2010. JustMed filed a proof of claim against the bankruptcy estate based on an existing judgment against Mr. Byce.

**MEMORANDUM DECISION AND ORDER - 1**

The facts underlying JustMed's judgment relate to computer source code Mr. Byce helped develop for JustMed. Mr. Byce removed the source code from JustMed's computers, which prompted JustMed's suit for various torts, including misappropriation of trade secrets, conversion, and breach of fiduciary duty. A central dispute in the lawsuit was who owned the source code.

JustMed prevailed at trial and the district court awarded roughly $48,000 in damages, which included a $5,000 punitive award. *See JustMed, Inc. v. Byce*, Case No. 1:05-cv-333-MHW (D. Idaho Jan. 1, 2008) (Amended Judgment, Dkt. 118), *reversed in part*, 600 F.3d 1118 (9th Cir. 2010). On appeal, the Ninth Circuit upheld the district court's finding that JustMed owned the source code. 600 F. 3d at 1128. It disagreed on the trade secrets issue, however, concluding that nothing in Byce's conduct took the action beyond the realm of a simple conversion. *Id.* at 1131. The court remanded the matter to the district court with instructions to determine whether JustMed could recover damages on the conversion or breach of fiduciary duty claims, and whether an injunction to prevent future misappropriation is warranted. *Id.* at 1131.

A few months after the Ninth Circuit issued its opinion, the Byces filed their bankruptcy petition. As mentioned, JustMed filed a proof of claim based on its judgment. JustMed also filed this adversary proceeding, seeking a determination that the judgment debt is nondischargeable.

JustMed's adversary complaint seems to presume that the bankruptcy court will resolve the issues the Ninth Circuit remanded to the district court. The complaint requests a $48,000 judgment "based upon conversion and breach of fiduciary duty."

JustMed now seeks to remove this adversary proceeding from the bankruptcy court based on the Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). JustMed contends that under *Stern*, the bankruptcy court has no constitutional authority to finally decide the "non-core state law issues on remand from the Ninth Circuit . . . ." *Motion to Withdraw Reference*, Dkt. 1, at 2.

## Analysis

The Court will address JustMed's interpretation of *Stern* after laying out the relevant statutory framework.

**1.     The Statutory Framework**

District courts have original and exclusive jurisdiction of all bankruptcy cases. 28 U.S.C. § 1334(a). They also have original, but not exclusive, jurisdiction over proceedings arising under Title 11, or arising in or related to, cases under Title 11. 28 U.S.C. § 1334(b). This Court has referred all bankruptcy cases to its bankruptcy court, as allowed under 28 U.S.C. § 157. *See D. Idaho Third Amended Gen. Order No. 38*.

The bankruptcy court's authority to enter a final order depends on whether the proceeding at hand is "core." 28 U.S.C. § 157(b). Bankruptcy courts may hear "core" proceedings and enter final orders. *Id.* In non-core proceedings, the bankruptcy court submits proposed findings of fact and conclusions of law to the district court for review and issuance of final judgment. 28 U.S.C. § 157(c)(1). Regardless of whether a proceeding is "core" or "non-core," the district court may withdraw the reference to the bankruptcy court at any time under 28 U.S.C. § 157(d).

## 2.    Mandatory Withdrawal

JustMed's primary argument is that under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the bankruptcy court lacks the constitutional authority to decide the state law issues present in this adversary proceeding. The Court rejects this overly broad interpretation of *Stern*.

In *Stern*, Pierce Marshall filed a defamation complaint and proof of claim in Vickie Marshall's bankruptcy proceeding. *Id*. at 2601. Publicly known as Anna Nicole Smith, Vickie married Pierce's father, J. Howard Marshall, who died about a year later and did not include Vickie in his will. *Id*. In his defamation complaint, Pierce contended Vickie had falsely accused him of manipulating his father's estate to prevent her from receiving an inheritance. *Id*. Vickie responded with a counterclaim for tortious interference with the inheritance she expected from J. Howard. *Id*. The bankruptcy court determined that Vickie's counterclaim was a "core" proceeding and entered a final judgment in the case. *Id*.

The Supreme Court held that although Congress has expressly defined creditors' counterclaims against the bankruptcy estate as "core,"[1] the bankruptcy court nonetheless lacked constitutional authority to enter final judgment on state law counterclaims such as Vickie's. *Id*. at 2618. By Justice Scalia's count, the Court offered "at least seven different reasons" for its holding, prompting him to observe that "[t]he sheer surfeit of factors that the Court was required to consider in this case should arouse suspicion that

---

[1] Congress defines core proceedings to include 16 different types of matters, including "counterclaims by the estate against persons filing claims against the estate." 11 U.S.C. §157(b)(2)(C).

MEMORANDUM DECISION AND ORDER - 4

something is seriously amiss with our jurisprudence in this area." *Id.* at 2621 (Scalia, J., concurring). The basic thrust of the Court's opinion, however, is that Article III courts must determine a debtor's state-law counterclaim *if* that counterclaim will not be finally resolved in the process of allowing or disallowing the creditor's proof of claim. *Id.* at 2611.

*Stern* repeatedly emphasized that its holding was a narrow one that "does not change all that much . . . ." *Id.* at 2620. Indeed, *Stern* ultimately holds that Congress, in just "one isolated respect" exceeded the constitutional requirement that federal judicial power be vested in Article III courts. *Id.*

*Stern's* narrow holding is easily distinguishable from facts presented here. First – and most obviously – JustMed is not asserting a counterclaim against a creditor. JustMed is itself a creditor and it has filed a proof of claim in these proceedings. JustMed's claims against the debtor – breach of fiduciary duty and conversion – are based on state law. But when JustMed filed a proof of claim, it triggered the process of "'allowance and disallowance of claims,'" thereby subjecting itself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 43 (1990) (per curiam) (citations omitted). The bankruptcy court thus has the constitutional authority to finally determine JustMed's claim – including state-law issues that arise within that claim. *Stern* did not hold that the bankruptcy court may not rule on state law issues when determining a proof of claim. *Accord In re Salander O'Reilly Galleries,* 435 B.R.106, 117 (Bankr. S.D.N.Y. 2011).

Moreover, JustMed's request for a withdrawal is contrary to two earlier Supreme Court decisions – *Katchen v. Landy*, 382 U.S. 323 (1966) and *Langenkamp v. Culp*, 498

MEMORANDUM DECISION AND ORDER - 5

U.S. 42, 43 (1990) (per curiam).

In *Katchen*, the Court permitted a bankruptcy referee acting under the Bankruptcy Acts of 1898 and 1938[2] to adjudicate the trustee's voidable preference action against a creditor who had filed a proof of claim. Although the creditor argued that the preference issue should be resolved through a "plenary suit" in an Article III court, *Katchen* held that the referee could decide the matter because it was impossible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference issue. 382 U.S. at 329-330, 332-34. The Court observed that "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Id.* at 333 n.9.

In *Langenkamp*, the Court reaffirmed *Katchen*, holding that a preferential transfer claim can be heard in bankruptcy court "when the allegedly favored creditor has filed a claim because *then* 'the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." *Stern*, 131 S. Ct. at 2617 (quoting *Langenkamp*, 498 U.S. at 44).

*Stern* did not call these earlier cases into doubt, nor did it otherwise question the bankruptcy court's quintessential power to finally decide claims against the bankruptcy estate. *See generally* 9 Am. Jur. 2d *Bankruptcy* § 778 ("The resolution and ranking of claims is at the core of the bankruptcy process."); *In re Bigler*, 458 B.R. 345, 370 n.24 (Bankr. S.D. Tex. 2011) ("In simpler terms, if a bankruptcy court can enter a final

---

[2] The bankruptcy referee under these earlier acts is "akin to a bankruptcy court today." *Stern*, 131 S. Ct. at 2616.

**MEMORANDUM DECISION AND ORDER - 6**

judgment on anything, it would be a final order resolving a dispute as to who gets a slice of the pie and how big that slice is."). In fact, *Stern* implicitly reaffirmed that power by repeatedly emphasizing it was concerned with state law counterclaims that are not necessarily resolved in the claims allowance process. *See, e.g.,* 131 S. Ct. at 2611 ("Vickie's claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."); *see also* 28 U.S.C. § 152(b)(2)(B) (defining "allowance or disallowance of claims against the estate" as core).

This action further contrasts with *Stern* because JustMed's adversary proceeding is brought directly under the Bankruptcy Code to determine the dischargeability of a debt, rather than being independent of bankruptcy law. Actions to determine the dischargeability of a debt are included in the 16 separately listed items Congress defines as core. *See* 28 U.S.C. § 157(b)(2)(I).

Granted, creditors' "counterclaims" against the bankruptcy estate are included in that same list, 28 U.S.C. § 157(b)(2)(C), and *Stern* nonetheless held that the bankruptcy courts could not finally decide the counterclaim at issue there. But the concerns that led to the decision in *Stern* are absent here. Most fundamentally, generic state-law counterclaims such as Vickie Marshall's are not created by bankruptcy law, while a nondischargeability action is. Again, it was not the mere presence of state law issues that drove the *Stern* decision; it was that the state-law claim had no other connection to the bankruptcy matter and would not be resolved in the claims allowance process. Here, the bankruptcy court will necessarily decide the amount of the alleged debt in determining

MEMORANDUM DECISION AND ORDER - 7

whether that debt is nondischargeable, as JustMed alleges. *See In re Boricich*, __ B.R. __, 2011 WL 5579062, at *1 (Bankr. N.D. Ill. Nov. 15, 2011) (bankruptcy court may properly reference state law in determining the amount of a debt asserted to be nondischargeable). And, even more compelling, the bankruptcy court must resolve these same state law issues in deciding JustMed's proof of claim.

Mandatory withdrawal is thus not required under *Stern*. The bankruptcy court has the statutory and constitutional power to finally decide this core matter.[3] This Court will therefore deny JustMed's motion to withdraw the reference.

The Court will address permissive withdrawal in Paragraph 3 below. Before doing so, however, the Court will provide some direction as to how it believes bankruptcy courts should proceed when facing a matter enumerated as a "core" in 28 U.S.C. § 157(b)(2), but which must be finally decided by an Article III court. In other words, what should a bankruptcy court do when faced with a bona fide *Stern* issue?[4]

If the bankruptcy court determines it is faced with an "unconstitutional core"

---

[3] This Court recognizes that the bankruptcy court is charged with determining whether any particular matter is core or non-core. *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding . . . ."). Nonetheless, the district court must determine whether to withdraw the reference, Fed. R. Bankr. P. 5011(a), and the withdrawal motion raises the issue of whether this adversary proceeding is core or non-core. As noted, this Court believes JustMed's adversary proceeding is a core matter. That said, the Court does not mean to preempt the bankruptcy court's authority to make that determination in the first place, or to limit its analysis of the issue. If the bankruptcy court believes this to be a non-core matter, it may proceed accordingly, by entering proposed findings and recommendations, as set out in 28 U.S.C. § 157(c)(1).

[4] To be clear, the Court sees no such issue here for the reasons already discussed. The remaining paragraphs of this section are dicta, and should be recognized as such. Of course, the Court generally does not issue advisory opinions. It does so here only because Stern created such an uproar by not directly answering this question, and because the question will inevitably arise in bankruptcy cases in this district.

matter, the question is how would Congress intend for the bankruptcy court to handle the matter in light of *Stern*. The two possibilities are that "unconstitutional core" matters default to the procedure used for non-core matters, (i.e., proposed findings and recommendations under 28 U.S.C. § 157(c)) or, alternatively, that such matters should be entirely removed from the bankruptcy courts. *See In re Mortgage Stores, Inc.*, 2011 WL 5056990, at *5 (discussing these two possibilities). A majority of district courts considering the issue hold that the bankruptcy courts retain the power to enter proposed findings and recommendations. *See McCarthy v. Wells Fargo Bank (In re El-Atari)*, 2011 WL 5828013, at *4 (E.D. Va. Nov. 18, 2011) (citing cases); *Field v. Lindell (In re Mortgage Store, Inc.)*, 2011 WL 5056990, at *5; (D. Haw. Oct. 5, 2011); *Kelley v. JPMorgan Chase & Co.*, 2011 WL 4403289, at *6 (D. Minn. Sept. 21, 2011); *Paloian v. American Express Co. (In re Canopy Fin., Inc.)*, 2011 WL 3911082, at *2, 4 (N.D. Ill. Sept. 1, 2011); *see also Gugino v. Canyon County (In re Bujak)*, 2011 WL 5326038, at *4 (Bankr. D. Idaho Nov. 3, 2011). *But see Samson v. Blixseth (In re Blixseth)*, 2011 WL 3274042, at *11-12 (Bankr. D. Mont. Aug. 1, 2011) (concluding that the bankruptcy court had no authority to hear fraudulent conveyance action as a non-core proceeding).

      This Court agrees with the majority view for several reasons. First, in enacting § 157(b), Congress intended to expand bankruptcy courts' powers to their constitutional limit. As the Ninth Circuit observed in *In re Mankin*, 823 F.2d 1296, 1301 (9th Cir. 1987), "Nothing in the legislative history of § 157(b) suggests that Congress enumerated examples of core proceedings in § 157(b)(2) with anything but a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit." More generally, in *Celotex*

**MEMORANDUM DECISION AND ORDER - 9**

*v. Edwards,* 514 U.S. 300, 308 (1995), the Supreme Court stated that "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, . . .'" (quoting *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (1984)).

Second, allowing the bankruptcy courts to hear (but not finally decide) "unconstitutional core" matters is consistent with *Stern*. *Stern* described its holding as limiting the bankruptcy court's authority "to enter final judgments." *Stern*, 131 S. Ct. at 2619. Additionally, the Court's explanation as to why it believed its decision to be so "narrow" is illuminating:

> [T]he current bankruptcy system also requires the district court to review de novo and enter final judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1) . . . . Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. We do not think the removal of counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

*Id.* at 2620 (internal citations omitted). Based on this passage, it appears that the Supreme Court intended for unconstitutional core matters to default to the § 157(c)(1) procedure, rather than to be wholly removed from the bankruptcy court. Consequently, even assuming the bankruptcy court is faced with a *Stern*-type matter, the bankruptcy court may enter proposed findings of fact and conclusions of law and submit them to this Court for de novo review.

### 3. Permissive Withdrawal

In opposing JustMed's withdrawal motion, the debtors focused on the district court's traditional, discretionary authority to withdraw a reference from the bankruptcy court under 28 U.S.C. § 157(d) (This Court "may withdraw, in whole or in part, any case or proceeding referred under this section, . . . on timely motion of any party, for cause shown."). JustMed did not respond to these arguments, nor did it raise or discuss the specific factors relevant to permissive withdrawal in its motion. Rather, JustMed's motion is based entirely on its "reluctant" conclusion that *Stern* mandates a withdrawal. *Mot.*, at 1-2 ("This motion is made reluctantly but necessarily because of a recent opinion issued by the United States Supreme Court.").

Under these circumstances, the Court will not engage in a point-by-point discussion of whether permissive withdrawal is appropriate. Suffice it to say that the Court finds no grounds for such a withdrawal. The Court will deny JustMed's motion.

### ORDER

JustMed's Motion to Withdraw Reference to Bankruptcy Court for Adversary Proceeding (Dkt. 1), is **DENIED.**

DATED: December 14, 2011

B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 11